# JS-6

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| LYNN ELLIS, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> PACIFIC BELL TELEPHONE COMPANY d/b/a AT&T CALIFORNIA, et al., <br><br> Defendants. | Case No.: SACV 10-01141-CJC(FFMx) <br><br> **ORDER GRANTING PLAINTIFFS' MOTION FOR REMAND** |

## INTRODUCTION & BACKGROUND

Plaintiffs filed this suit on April 16, 2010 in California state court alleging class claims including failure to pay overtime wages or provide meal periods. Notice of Removal Ex. 1 at 4. Plaintiffs filed their First Amended Complaint ("FAC") in state court on June 3, 2010. Notice of Removal Ex. 2 at 1. Defendants removed this action to federal court on July 28, 2010 pursuant to the Class Action Fairness Act of 2005

("CAFA"), 28 U.S.C. §§ 1332(d), 1453.  Notice of Removal at 1–3.  On November 22, 2010, Plaintiffs filed the pending motion for remand.  Dkt. # 8.  On January 6, 2011, the Court issued an Order finding that Defendants had met their burden of demonstrating that there was minimal diversity between the parties and that Plaintiffs' proposed class contains at least 100 members.  The Court ordered additional briefing as to whether the amount in controversy exceeds $5 million as required by CAFA.  *See* 28 U.S.C. § 1332(d)(2).  Having considered the parties' arguments, and for the reasons explained below, the Court hereby GRANTS Plaintiffs' motion for remand.[1]

## ANALYSIS

A civil action brought in a state court but over which a federal court may exercise original jurisdiction may be removed by the defendant to a federal district court.  28 U.S.C. § 1441(a).  CAFA provides federal jurisdiction over class actions in which the amount in controversy exceeds $5 million, there is minimal diversity between the parties, and the number of proposed class members is at least 100.  28 U.S.C. § 1332(d)(2), 1332(d)(5)(B).  The removal statute is "strictly construe[d] . . . against removal jurisdiction.  Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (internal citations omitted).  And a district court must remand the case to state court if it appears at any time before final judgment that the district court lacks subject matter jurisdiction.  28 U.S.C. § 1447(c).

Where, as here, the complaint does not plead a specific amount of damages, "the removing defendant must prove by a preponderance of the evidence that the amount in

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* FED. R. CIV. P. 78; LOCAL RULE 7-15.  Accordingly, the hearing set for February 14, 2010, at 1:30 p.m. is hereby vacated and off calendar.

controversy requirement has been met." *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006) (per curiam); *see also id.* at 685 ("[U]nder CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction."). A removing defendant is not obligated to "research, state, and prove the plaintiff's claims for damages," *Muniz v. Pilot Travel Ctrs. LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *2 (E.D. Cal. May 1, 2007) (internal quotation marks omitted), but a court "cannot base [its] jurisdiction on a [d]efendant's speculation and conjecture," *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 1002 (9th Cir. 2007) (finding defendant had not met the more stringent legal certainty standard applicable in that case). In measuring the amount in controversy, the district court first considers the plaintiff's complaint. *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 399 (9th Cir. 2010). The district court "must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008). A court may consider "summary-judgment-type evidence relevant to the amount in controversy at the time of removal" as well as supplemental evidence proffered by the parties when determining whether the amount in controversy exceeds the statutory minimum. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (internal quotation marks omitted); *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n.1 (9th Cir. 2002) (per curiam).

Specifically, defendants may rely on calculations to satisfy their burden so long as their calculations are good faith, reliable estimates based on the pleadings and other evidence in the record. *See Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009) (relying on defendant's calculations where those calculations "were relatively conservative, made in good faith, and based on evidence wherever possible"); *Jimenez v. Allstate Ins. Co.*, No. CV 10-8486 AHM (FFMx), 2011 WL 65764, at *2-3 (C.D. Cal. Jan. 7, 2011) (finding calculations of defendant's human resources employee sufficient to satisfy burden where employee's calculations were based on "the approximate number of

Claims Adjusters, their average salary, amount worked per year, and other relevant information" and employee's "knowledge was based on her normal business responsibilities and her personal review of [the] [d]efendant's business records"). Conversely, calculations will not satisfy the defendants' burden when they lack sufficient basis and amount to "speculation and conjecture."  *See Lowdermilk*, 479 F.3d at 1002.

      Here, Defendants have failed to convince the court that it is more likely than not that the amount in controversy exceeds $5 million.  More than 90% of Defendants' calculation that the amount in controversy exceeds $5 million derives from Defendants' estimate of the value of Plaintiffs' claim that Defendants unlawfully failed to pay overtime compensation to putative class members.[2]  *See* FAC ¶¶ 47–54.  The remainder comes from Defendants' calculation of alleged waiting time penalties.  Based on Plaintiffs' allegations, Defendants' assert that approximately 44 employees could have potential claims for waiting time penalties in the form of 30 days continued wages. Defs.' Supplemental Br. Opp'n Mot. Remand at 3; Thomson Decl. ¶ 10.  For these employees, the average waiting time penalty would be $9,906.60 and would total $436,022 for all 44 potential claimants.  Thomson Decl. ¶ 10.  As a result, the remaining $4,563,978.01 ($5,000,000.01 minus $436,022) is based on Plaintiffs' overtime claims because Defendants have not provided damage estimates for any of Plaintiffs other claims.  *See* Defs.' Supplemental Br. Opp'n Mot. Remand at 3 (noting Defendants' calculation "exclud[es] premium pay for the alleged failure to provide meal breaks,

---

[2] Although there is some dispute as to the relevant class period, Plaintiffs allege that equitable tolling should permit claims arising as early as February 13, 2004.  *See* FAC ¶¶ 38 (defining putative class), 92–98 (alleging equitable tolling applies).  As these claims, and the damages attributable to them, are technically in controversy, the Court will assume for the purposes of this motion that equitable tolling will permit these claims.  *See Lewis*, 627 F.3d at 400 ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [a] defendant's liability.").  Accordingly, the Court will base its analysis on Defendants' calculations that assume a class period beginning February 13, 2004.

interest, pay stub penalties, alleged claims for reimbursement and Private Attorney General Act Penalties").

As Defendants explain, Plaintiffs and other putative class members were highly paid employees that, during the relevant time period, earned approximately $85,883 per year and were compensated at an average hourly rate of approximately $41.29 per hour before bonuses. Thomson Decl. ¶ 7. This hourly rate corresponds to a normal overtime rate of $61.93. Defendants estimate that, pursuant to the FAC's class definition, there are 124 potential class members for the relevant class period and these individuals worked 19,701.6 work weeks. *Id.* According to Defendants, assuming the $61.93 overtime hourly rate, overtime damages plus waiting time penalty damages "equal or exceed $5 million if on average each of the putative class members worked at least 3.74 hours of overtime every week" during the relevant time period. *Id.* ¶ 10.

Defendants do not, however, point to any allegation contained in Plaintiffs' FAC or any other record evidence specific to this case to support their estimate of 3.74 hours of overtime per week per putative class member. As Plaintiffs observe, Defendants appear to have "arrived at [their] 3.74 hour figure not based on any evidence of actual hours worked by potential class members or any allegation made by Plaintiffs, but merely . . . to arrive at $5,000,000." Pls.' Resp. Defs.' Supplemental Br. Opp'n Mot. Remand at 5. In some overtime cases, the plaintiff's complaint or other record evidence will support estimates like Defendants' 3.74 hours estimate. *See Behrazfar*, 687 F. Supp. 2d at 1004 (finding estimate of 2.5 hours of overtime per week "relatively conservative and based on evidence" where the plaintiff's complaint alleged that she worked between 40 and 60 hours per week and she testified in her deposition that she typically worked 10 hours of overtime per week). Unlike the complaint in *Behrazfar*, here Plaintiffs' FAC merely alleges that class members "were suffered, permitted, and/or required to work by [Defendants] in excess of forty (40) hours per week and/or eight (8) hours in one work

day but were not paid for such overtime work as required by California law." FAC ¶ 49. Although estimates with less evidentiary basis than the estimate in *Behrazfar* have been accepted, courts must be persuaded that the estimates are made in good faith and are reasonable. *See Jimenez*, 2011 WL 65764, at *3 (finding the defendant's estimate of 1 hour of overtime per week "reasonable and conservative" where the plaintiff's complaint alleged that class members "'regularly and/or consistently worked in excess of eight (8) hours in a day and/or in excess of forty (40) hours in a week'"). But a court "cannot base [its] jurisdiction on . . . speculation and conjecture." *Lowdermilk*, 479 F.3d at 1002.

Although there is an understandable temptation for removing parties to rely on an estimate that conveniently satisfies the amount in controversy requirement, the parties must, at a minimum, explain why that estimate is also reasonable. Here, Defendants' sole argument as to the reasonableness of their 3.74 hours estimate is based on a related, now-settled suit ("*Mahoney*"). The attorneys for Plaintiffs in this action also represented the plaintiffs in *Mahoney* in their suit against Defendants. Defendants represent that "although the overtime amounts have been hotly disputed, [the *Mahoney*] [p]laintiffs have claimed that they work[ed] more overtime than 3.89 hours a week." Defs.' Supplemental Br. Opp'n Mot. Remand at 4; Weber Decl. ¶ 2. In support of this representation, Defendants' attorney has provided a self-serving, hearsay declaration stating that she "took the deposition of the named plaintiffs in [*Mahoney*] and [she is] familiar with the terms of class settlement" and that the *Mahoney* "[p]laintiffs claimed that they worked more overtime than 3.89 hours a week." Weber Decl. ¶ 2.

Reliance on this evidence is problematic for a variety of reasons, including that Defendants (1) do not provide the evidentiary support for the assertion that the *Mahoney* plaintiffs claimed over 3.89 hours a week in overtime, (2) do not explain why the claims in the *Mahoney* case were so similar that the Court in *this* case should rely on the

estimates of the *Mahoney* plaintiffs,[3] and (3) assert the *Mahoney* plaintiffs' estimate is reasonable—despite the fact they "hotly disputed" the estimate in that litigation. Given the unreliability and weakness of the evidence to support the 3.74 hours per week estimate, the Court is not persuaded that Defendants' estimate is an informed and reasonable one. Thus, Defendants have failed to meet their burden of demonstrating that the amount in controversy exceeds $5 million as CAFA requires.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' motion to remand is GRANTED. Plaintiffs have not requested attorneys' fees in conjunction with their motion to remand, nor will any be awarded.

DATED:   February 10, 2011

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE

---

[3] On this point, Plaintiffs argue that the *Mahoney* class contained members that occupied different positions than those at issue in this litigation. Pls.' Resp. Defs.' Supplemental Br. Opp'n Mot. Remand at 6; Jaramillo Decl. ¶ 2. The Court does note, however, that the *Mahoney* class did allegedly include some of the putative class members in this litigation. *See, e.g.*, Weber Decl. ¶ 4 (discussing number of remaining putative class members in this claim after excluding individuals that released claims in the *Mahoney* settlement).